Town of Greenwich et al. *v.* Liquor Control
Commission et al.
(11116)
(11117)

Peters, Healey, Parskey, Shea and Grillo, Js.

Argued October 7—decision released December 6, 1983

*Robert F. Vacchelli,* assistant attorney general, with whom were *Laura F. Muggeo,* legal intern, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Richard M. Sheridan,* assistant attorney general, for the appellant (named defendant).

*Frederic S. Brody,* for the appellants (defendants Tavern on the Rocks, Inc., and Francis McGuire).

*Eugene F. McLaughlin, Jr.,* assistant town attorney, for the appellees (plaintiffs).

ARTHUR H. HEALEY, J. This appeal arises out of the issuance of a night club liquor permit by the defendant Connecticut liquor control commission (commission) to the defendant Francis W. McGuire (McGuire) as permittee for whom the corporate defendant, Tavern on the Rocks, Inc. (Rocks), was the backer for certain premises in the plaintiff town of Greenwich (Greenwich). This permit was issued over the objections of the plaintiff Greenwich as well as those of the plaintiff Maurice F. Roddy (Roddy), who was the zoning enforcement officer, building inspector and building official of Greenwich. Greenwich and Roddy appealed the commission's decision to the Superior Court. That court sustained their appeal and held that the "Commission acted illegally, arbitrarily and unreasonably in granting the defendants McGuire . . . and Rocks a night club permit . . . and [ordered] said permit to be revoked by the Liquor Control Commission." The defendants McGuire, Rocks and the commission have appealed[1] that decision to this court. We find error.

---

[1] The defendants McGuire and Rocks filed a petition for certification and the defendant commission filed its petition for certification. This court granted both petitions, and they have been combined into one appeal.

The basic facts are essentially not in issue. The premises in question had been operated for several years prior to November 18, 1977,[2] under a restaurant liquor permit from the commission in a GB business zone, in which a restaurant was a permitted use under the zoning ordinance. It also operated under a certificate of occupancy for a restaurant that had been issued by Greenwich. On two occasions prior to November 18, 1977, and prior to applying to the commission for a night club liquor permit, McGuire and Rocks had applied to Roddy for his certification that the town zoning ordinances did not prohibit the sale of liquor for their restaurant premises. In both instances, Roddy refused his certification on the grounds, as the trial court found, that "a night club use" was not permitted in that zone and that the Connecticut state building code would be violated. In each instance, McGuire and Rocks appealed his decision to the zoning board of appeals which upheld Roddy's decision. In July, 1977, they appealed[3] the decision of the zoning board of appeals to the Court of Common Pleas.

Roddy maintained that he first became aware of the issuance of the night club liquor permit upon inquiry concerning a letter from the commission dated February 9, 1978. The commission assigned the McGuire permit for a hearing on March 2, 1978, and wrote Roddy requesting that he attend "to testify to the facts concerning the zoning ordinance." He did attend that hearing and testified at some length, explaining that he refused to sign the McGuire-Rocks application for

[2] On November 18, 1977, the defendant commission issued a night club liquor permit for these premises to Francis McGuire and Tavern on the Rocks, Inc.

[3] This appeal was returnable to the Court of Common Pleas at Stamford on the first Tuesday of July, 1977.

a night club permit because the Greenwich zoning laws do not permit a night club.[4] Following the hearing, the commission reaffirmed its previous decision on the issuance of the night club permit. In doing so, it rejected the claim that Greenwich zoning prohibited a night club permit for the premises and it found General Statutes § 30-44[5] inapplicable.

Thereafter, Greenwich and Roddy appealed from the commission's decision to the Superior Court. In sustaining their appeal, the court, *Tierney, J.,* found essentially that the commission erred because: (1) it failed to apply General Statutes § 30-44 which mandated the denial or revocation of a night club permit because the zoning enforcement officer and the zoning board of appeals had determined that such a permit would violate the zoning regulations in the zone in which the permit premises were located,[6] and (2) its action con-

---

[4] For the purposes of enlightenment, we have consulted the transcript of the hearing before the commission on March 2, 1978. Practice Book, 1978, § 3060R; *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 162, 411 A.2d 1371 (1979); *Frager* v. *Pennsylvania General Ins. Co.,* 161 Conn. 472, 479, 289 A.2d 896 (1971).

[5] General Statutes § 30-44 provides: "The department of liquor control shall refuse permits for the sale of alcoholic liquor . . . (2) where prohibited by the zoning ordinance of any city or town."

[6] Referring to General Statutes (Rev. to 1981) § 19-400 (now § 29-265) (which is part of the state building code), the trial court said that that statute provided that "no building shall be occupied unless a certificate of occupancy has been issued by the building official, certifying that the building conforms to the provisions and regulations of the State Building Code." It also observed that "the State Building Code distinguishes between 'night club' and 'restaurants other than night clubs' [i]n Use Group F-2 of the code and the defendants do not have a 'night club' certificate of occupancy under this group."

It then went on to say that the commission, "contrary to the requirement above, found that the defendants possessed a valid Certificate of occupancy. *This was beyond their authority to determine."* (Emphasis added.)

travened the doctrine of the exhaustion of administrative remedies.[7] The commission, McGuire and Rocks have appealed.

While the three defendants have raised a number of issues in their briefs, these issues can fairly be channeled into four claims. They claim that the trial court erred: (1) on the issue of whether the commission is required to deny an application for a liquor license which lacks local zoning compliance certification or whether the commission is empowered by statute to render its separate and independent determination as to zoning compliance; (2) in concluding that the commission exceeded its authority by reviewing a decision by Roddy under the state basic building code; (3) in deciding that Greenwich has authority to bar the issuance of night club permits by use of zoning laws where its authority to do so is limited by statute, either to exercising local option powers (General Statutes § 30-9[8] et seq.) or to reducing the hours of sale by referendum (General Statutes §§ 30-10, 30-91);[9] see *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 79, 440 A.2d 792 (1981); and (4) in deciding that the action of the commission (and the other defendants) contravened the doctrine of the exhaustion of administrative remedies.

---

[7] Included in this conclusion was the trial court's determination that the other two defendants "failed to initiate, let alone exhaust . . . available administrative procedures [under the state building code]."

[8] General Statutes § 30-9 entitled "Status of towns as to sale of alcoholic liquor" provides: "The sale of alcoholic liquor under the provisions of this chapter shall be permitted in any town in the state until by vote of the town, taken as provided in section 30-10, a contrary preference has been indicated; and nothing contained in this chapter shall be construed to permit the sale of alcoholic liquor in any town which has voted to the contrary."

[9] General Statutes § 30-10 entitled "Vote on liquor permit question" provides in part: "Upon the petition of not less than ten per cent of the electors of any town, lodged with the town clerk at least sixty days before the date of any regular town election, the selectmen of the town shall warn

In turning to the defendants' first claim, which implicates their remaining claims, we first observe that it is broader than is necessary to comport with a just disposition of this appeal. The limitation of an issue on appeal by counsel "to the real point of serious controversy is to be highly commended." *Stephanofsky* v. *Hill,* 136 Conn. 379, 380, 71 A.2d 560 (1950). The real issue, therefore, for this court is whether the commission may properly issue a night club permit to a permittee who already holds not only a valid restaurant liquor permit but also a valid certificate of occupancy from the local authorities for a restaurant where certification of compliance with local zoning has been denied by the local zoning authorities. We hold that the commission properly issued the night club liquor permit in this case.

"Because of the nature of the liquor business, 'the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity.' *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674, 88 A.2d 388 [1952], and cases cited. The statute vests the commission with a liberal discretion. *Cusano* v. *Dunn,* 137 Conn. 20, 25, 74 A.2d 477 [1950], and cases cited [which should not lightly

---

the electors of such town that, at the regular town election, a vote shall be taken to determine: (1) Whether or not the sale of alcoholic liquor shall be permitted in such town, or (2) whether the sale of alcoholic liquor shall be permitted in such town in one or more of the classes of permits set forth in section 30-15. . . ."

General Statutes § 30-91 entitled "Hours and days of closing" provides in part: "(a) . . . (2) . . . . The sale or dispensing or consumption or the presence in glasses or other receptacles suitable to permit the consumption of liquor by an individual of alcoholic liquor in places operating under night club permits may not be allowed except during the hour immediately following the closing time established under this section for the other permits listed in section 30-21a and on the days allowed under such other permits. Any town may, by vote of a town meeting or by ordinance, reduce the number of hours during which sales under this subsection shall be permissible. . . ."

be disregarded. *Sumara* v. *Liquor Control Commission,* 165 Conn. 26, 30, 327 A.2d 549 (1973)]. It does not, however, authorize the commission to act capriciously, unreasonably or arbitrarily. *Kantrowitz* v. *Patterson,* 132 Conn. 426, 428, 44 A.2d 916 [1945]." *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 552, 135 A.2d 595 (1957); see *Pierce* v. *Albanese,* 144 Conn. 241, 248, 129 A.2d 606 (1957). "The function of the [trial court] on an appeal from the commission is to determine whether the commission acted so arbitrarily and unreasonably as to abuse its discretion. The court can do no more than decide whether upon the facts before it the commission has mistaken the law, or whether it has reached a conclusion untenable in the light of logic and reason. *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 553, 135 A.2d 595 [1957]; *DeMond* v. *Liquor Control Commission,* 129 Conn. 642, 646, 30 A.2d 547 [1943]. The issue is whether the commission has followed the mandate of the law and whether its decision could be reached by an impartial appraisal of the facts and is the result of reason and logic. *Aminti* v. *Liquor Control Commission,* supra, 553." *Williams* v. *Liquor Control Commission,* 175 Conn. 409, 413–14, 399 A.2d 834 (1978). In this context, a crucial consideration is General Statutes § 30-44, which provides that the commission "shall refuse permits for the sale of alcoholic liquor . . . (2) where prohibited by the zoning ordinance of any city or town." We have said, and we reaffirm, that § 30-44 is a "statutory mandate that the zoning ordinances of any city or town must be complied with before any permit for the sale of alcoholic liquor can be granted by the liquor control commission." *Karp* v. *Zoning Board,* 156 Conn. 287, 298, 240 A.2d 845 (1968); see *P. X. Restaurant* v. *Windsor,* 189 Conn. 153, 160, 454 A.2d 1258 (1983); *Kamerman* v. *LeRoy,* 133 Conn. 232, 236, 50 A.2d 175 (1946).

The trial court found that on two occasions prior to the commission's issuance of a night club liquor permit, McGuire and Rocks "applied for a *night club liquor permit* and requested the endorsement of the Greenwich Building official [Roddy]."[10] (Emphasis added.) It also determined that the premises were in an area zoned general business "in which a restaurant was a permitted use but a *night club* was not." (Emphasis added.) It further found that the zoning and building official refused each time to endorse the application of these defendants because "a night club use" was not permitted in a GB zone and also because the state building code would be violated. These findings are crucial. It is beyond cavil, therefore, that these premises were in a zone in which a restaurant was a permitted use but a night club was not. There is no question that these defendants had not only a certificate of occupancy for a restaurant but also a valid restaurant liquor permit on both occasions when they sought Roddy's certification for a night club liquor permit. There is also no question that these defendants did not possess a certificate of occupancy for a "night club" for these premises.

Upon an examination of the law and the circumstances, it becomes apparent that the trial court and Roddy incorrectly equated the issuance of a "night club liquor permit" for these premises with a license to use the premises as a "night club." This misapprehension is perhaps attributable to the fact that the term "night club permit" in isolation is somewhat of a misnomer. See generally *Sheehan* v. *Zoning Commission,* 173 Conn. 408, 411, 378 A.2d 519 (1977). The statutory scheme, however, in chapter 545 of the General Statutes, entitled "Liquor Control Act," and specifically

---

[10] The brief filed by Greenwich and Roddy stated that it is "admitted and uncontested" that these defendants twice submitted to Roddy an application for "a night club liquor permit."

General Statutes §§ 30-21a[11] and 30-91[12] makes it clear what such a permit is. Simply put, it is nothing more than an "extra hours" permit which allows the sale of alcoholic liquor for an extra hour after closing time on premises already validly operating under one of the classes of permits set out in § 30-21a. That statute requires the existence of such a permit as a predicate for the issuance of a night club permit by the commission. Section 30-91 (a) prohibits the "sale or dispensing or consumption or the presence in glasses or other receptacles suitable to permit the consumption of liquor . . . in places operating under night club permits . . . except during the hour immediately following the closing time established under this section for the other permits listed in section 30-21a and on the days allowed under such other permits. . . ." Significantly, the type of permit premises for which § 30-21a requires the antecedent existence of a permit for a night club permit to be issued by the commission, i.e., "hotel," "restaurant," "cafe," "coliseum," "club," "golf country club," "nonprofit theater," "nonprofit public art museum," "special sporting facility" and "tavern" are all defined in General Statutes § 30-1, the definitional section of chapter 545. More to the point, the term "night club" is defined nowhere in that chapter. Insofar as the term "night club" itself is concerned, we are not met with the situation where if the legislation itself contains a specific definition, the courts are bound to accept

---

[11] General Statutes § 30-21a entitled "Night club permit" provides: "A night club permit shall allow the sale of alcoholic liquor to be consumed on the premises of a place operating under a hotel permit, a restaurant permit, a cafe permit, a coliseum permit, a coliseum concession permit, a club permit, a golf country club permit, a nonprofit theater permit, nonprofit public art museum permit, special sporting facility bar permit, special sporting facility employee recreational permit, special sporting facility concession permit, special sporting facility guest permit, special sporting facility restaurant permit or tavern permit."

[12] See footnote 9, supra.

that definition. *Danbury* v. *Corbett,* 139 Conn. 379, 384, 94 A.2d 6 (1953) (local ordinance contained a specific definition of "a package store"). 2 Sutherland, Statutory Construction (3d Ed.) § 3002. There is nothing in this statute that requires an applicant for a night club permit from the commission to demonstrate that the permit premises are or will be used as a "night club." For us to conclude that it did would confute the established rule that "it is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words." *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974); see *Brunswick Corporation* v. *Liquor Control Commission,* supra, 81. All that the statute requires in this case is that an applicant for a night club permit already have a valid restaurant permit.

Our resolution, however, of this first claim analytically implicates the remaining three claims, and two of them may be discussed together. They are that the trial court erred in concluding that the commission exceeded its authority by reviewing a decision by Roddy under the state building code and also in deciding that Greenwich had the authority to bar, by the use of zoning laws, the issuance of the night club permit. The trial court's clear implication[13] in its decision that the commission exceeded its authority when it found that the defendants McGuire and Rocks possessed a valid certificate of occupancy for a night club is wholly without foundation. The commission, of course, made no decision under the basic building code: it did not issue or authorize the issuance of a certificate of occupancy as suggested; it had no authority to do so. Certainly, neither Greenwich nor Roddy can deny Roddy's admission at the commission hearing that there was "cur-

---

[13] See footnote 6, supra.

rently in existence a proper certificate of occupancy for a restaurant." The refusal to certify the application for a night club permit was admittedly because the use of the premises as a "night club" was not permitted in the zone involved. Again, the trial court, like Roddy, was mistaken[14]—a night club permit was not at all a definition or description of what the permit premises were but its issuance by the commission simply permitted the premises to remain open one hour longer than the closing time established for the underlying permit in the absence of a local ordinance prohibiting it.

In concluding that a night club permit was prohibited by the Greenwich zoning ordinance, the trial court emphasized that the state building code distinguishes between "night clubs" and "restaurants other than night clubs" in use group F-2 of the code and that the defendants do not have a "night club" certificate of occupancy "under this group." Pointing out that General Statutes § 19-400 provided that no building shall be occupied unless the building official has issued a certificate of occupancy certifying that the building conforms to the state building code, the court reasoned that, contrary to these proscriptions, the commission found that the defendants possessed a valid certificate of occupancy (for a night club) which was beyond their authority. It then went on to determine that although the defendants were entitled to an administrative review of the action of the building official under the building code itself, not only had they not exhausted such procedure, but the commission, without any authority, had conducted such a review. These determinations constitute error.

---

[14] This misapprehension also persists in the Greenwich-Roddy brief where it states: "The legislature created a difference between a *night club* and a restaurant . . . and assigned a different statute to each, Conn. Gen. Stat. § 30-21a for a *night club* and § 30-22 for a restaurant. It has also differentiated between the two in Conn. Gen. Stat. § 30-41 ['Permit fees']." (Emphasis added.)

In applying to Roddy for his certification, the defendants were not seeking permission to use their restaurant premises as a "night club." They merely wanted his certification that Greenwich zoning did not prohibit the extra hour permit which the legislature denominated a night club permit. The distinction the trial court purported to draw between "night clubs" and "restaurants other than night clubs" under the state code had absolutely no applicability here. There was no evidence in this case that the use of the permit premises was as a night club[15] nor that they were asking to do so. Possessing a restaurant permit and a certificate of occupancy for a permit, the defendants McGuire and Rocks were entitled to Roddy's certification unless Greenwich zoning prohibited it.

Greenwich zoning did not justify Roddy's refusal to certify as requested and the trial court erred in deciding it did. Moreover, in the circumstances of this case, the commission had the authority to determine that the issuance of the night club permit would not violate Greenwich zoning. It is apparent from what we have already said that Greenwich has not been able to point to any of its zoning laws that prohibited Roddy's certification for a night club permit. We have seen that it is completely irrelevant whether zoning prohibited a "night club" because that was not the basis for the requested certification. Greenwich concededly had not utilized the authority given to municipalities by General Statutes § 30-91 (a) to enact by referendum a prohibition against the extra hour sale or consumption of

[15] None of our cases have defined the term "night club." One court, in observing that the restaurant, bar and lounge of the administration building of the airport involved was in keeping with the custom of modern airports, said that the testimony showed "that this type of business was not one that fell in the category of a night club as that term is usually applied and understood. There were no floor shows, entertainers or orchestra." *Meraux & Nunez* v. *Houck*, 202 La. 820, 839, 13 So. 2d 233 (1942).

alcoholic liquor permitted under a night club permit.[16] What they did attempt, without any basis in their zoning laws and without having employed the legitimate legislative option of limiting the hours of sale afforded by § 30-91 (a), was to prohibit the issuance of this permit under the guise of zoning. This they could not do. See *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 293, 57 A.2d 259 (1948). Greenwich is a permit town and the only information the applying defendants, and ultimately the commission, sought[17] was whether zoning prohibited a valid restaurant use. In the absence of a zoning prohibition, it was for the commission to determine if the night club permit was to issue. *State ex rel. Haverback* v. *Thomson,* supra.[18] The town's claim, therefore, that this was a matter for Roddy's discretion is without merit.

---

[16] At the hearing before the commission the chairman asked the following question of Roddy and received the following answer: "Q. Has the Town of Greenwich taken a referendum in which the sale of alcoholic liquor for an extra hour has been prohibited by the Town voters?

"A. No."

[17] Commission regulation § 30-6-A1 (a) entitled "New Applications" provides in part: "All new applications . . . shall be accompanied by: zoning officer approval for the proposed use . . . ." The legislature established the "night club permit" by statute, i.e., General Statutes § 30-21a, and because General Statutes § 30-39 entitled "Applications for permits, renewals," required "(a) (1) [a]ny person desiring a liquor permit . . . shall make a sworn application therefor . . . upon forms to be furnished by the department [of liquor control] . . . . Applicants shall submit documents sufficient to establish that . . . zoning requirements and local ordinances concerning hours and days of sale will be met. . . ." The defendants McGuire and Rocks, therefore, had to file an application for that night club permit although they already had a restaurant permit.

General Statutes § 30-6 gave the commission the authority to make all necessary regulations to carry out and enforce the provisions of the Liquor Control Act in chapter 545 of the General Statutes.

[18] In *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 160, 454 A.2d 1258 (1983), we said: "It is reasonable . . . to imply that liquor premises are subject to local zoning ordinances which involve matters other than location. Once a liquor location is approved, there may be additional health, safety and welfare factors unrelated to the fact that liquor will be sold at

Turning to the final claim, we find the trial court's conclusion that the commission's action contravened the doctrine of exhaustion of administrative remedies to be untenable. "This court has 'repeatedly affirmed the principle that when an adequate administrative remedy is provided by law, it should be exhausted.' *Connecticut Life & Health Ins. Guaranty Assn. [CL & HIGA]* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977); see *Conto* v. *Zoning Commission,* 186 Conn. 106, 114–15, 439 A.2d 441 (1982); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 472, 378 A.2d 547 (1977)." *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 93, 448 A.2d 210 (1982). The United States Supreme Court, in noting that there are "numerous exceptions" to this doctrine, has said that an "[a]pplication of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." *McKart* v. *United States,* 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969). Davis comments that the "[i]mpossibility or improbability of obtaining adequate relief by pursuing administrative remedies is often a reason for dispensing with the administrative requirement." Davis, Administrative Law § 20.07. We have recognized several exceptions[19] including one that

that location. These are zoning matters of local concern and thus are within the expertise of local authorities." In *P. X. Restaurant,* we were called upon to consider General Statutes § 30-52 which concerns the circumstances of the removal of a permit to another location including, as occurred in that case, removal because of the threat of the exercise of the power of eminent domain. *P. X. Restaurant, Inc.* v. *Windsor,* supra, 155. Nothing we said in *P. X. Restaurant* is inconsistent with what we say today where we not only deal with a different statute but where the town of Greenwich has not chosen to utilize General Statutes § 30-91 (a), which looks to the enactment of a local ordinance limiting the hours of sale of alcoholic liquor.

[19] One court has pointed out that "[t]he doctrine of exhaustion of administrative remedies is not a strict jurisdictional requirement, but rather a flexible concept which must be tailored to the circumstances of the particular case. *McKart* v. *United States,* 395 U.S. 185, 89 S. Ct. 1657, 23 L. Ed. 2d

a party need not exhaust an inadequate or futile administrative remedy. *Conto* v. *Zoning Commission,* supra, 115; *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979); *Corsino* v. *Grover,* 148 Conn. 299, 308, 170 A.2d 267 (1961); *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 13–14, 37 A.2d 689 (1944). This court has acknowledged that a strong justification may exist for creating an exception to requiring submission to the administrative process. *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 591, 424 A.2d 285 (1979). Such justification is present on the record before us.

This case does not present the usual issue of a premature resort to other avenues of redress in derogation of the doctrine. Rather, the defendants McGuire and Rocks initiated an appeal of the decision of the Greenwich zoning board of appeals sustaining Roddy's refusal to certify their application. Thereafter, in 1977, they obtained commission approval of their application for a night club permit. Having adequately obtained the relief they originally sought through their request to Roddy to certify their application, they no longer pressed their court appeal from the zoning board of appeals. To do so would have availed them nothing. "The law does not require the doing of a useless thing." *Corsino* v. *Grover,* supra. "A remedy need not be exhausted if to do so would be a futile gesture. *City Farmers Trust Co.* v. *Schnader,* 291 U.S. 24, 34, 54 S. Ct. 259, 78 L. Ed. 628 (1934); *Montana Nat'l Bank of Billings* v. *Yellowstone County,* 276 U.S. 499, 505, 48 S. Ct. 331, 72 L. Ed. 673 (1928); Davis, Administrative Law Treatise, § 20.07, at 99 (1958)." *Porter City*

194 (1969) . . . ." *South Dakota* v. *Andrus,* 614 F.2d 1190, 1192 n.1 (8th Cir.), cert. denied, 449 U.S. 822, 101 S. Ct. 80, 66 L. Ed. 2d 24 (1980).

*Chapter of Izaak Walton League* v. *Costle,* 571 F.2d 359, 363 (7th Cir.), cert. denied, 439 U.S. 834, 99 S. Ct. 115, 58 L. Ed. 2d 130 (1978).

The action of the commission did not violate the concept of administrative autonomy inherent in the exhaustion doctrine. There is nothing in the statute that requires an applicant for a night club permit to show that he has a right to use or desires to use the premises involved as a night club. Therefore, there is no necessity to go into the impact of the action of the Greenwich zoning board of appeals after Roddy's refusal and upon the ultimate appeal to court of the latter's decision on the land use of the permit premises, as all that is irrelevant to the real issue before us.

We point out that the decisive issues before the commission and the town zoning authorities were clearly not the same. Liquor control commission regulation § 30-6-A1 prescribes that new applications for permits "shall be accompanied by: zoning officer approval for the proposed use: town clerk approval for the proposed hours of sale . . . ." The zoning enforcement officer mistakenly viewed the issue of certification as depending upon whether the Greenwich ordinance permitted the premises to be used for a night club and concluded that it did not. That conclusion was neither challenged nor altered by the determination of the liquor control commission because so long as a restaurant could lawfully be conducted at the location, a "night club permit," which is actually an after-hours restaurant liquor permit, could properly be issued. Therefore, our decision in this case does not contravene our oft-repeated position, which we reaffirm, that a party who has a statutory right of appeal from the decision of an administrative officer may not "instead of appealing bring an independent action to test the very issue which the appeal was designed to test." *Astarita* v. *Liquor Con-*

*trol Commission,* 165 Conn. 185, 189, 332 A.2d 106 (1973). In *Astarita,* we struck down the bringing of such an independent action as violating the doctrine of exhaustion of administrative remedies. *Astarita* v. *Liquor Control Commission,* supra.

Additionally, the judgment of dismissal[20] of the court in April, 1979, for failure to prosecute with due diligence was not an adjudication on the merits. *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 411–12, 456 A.2d 325 (1983). There is no evidence that the commission knew that the appeal was pending at the time it issued the night club permit in November, 1977. It is apparent that at the commission hearing on March 2, 1978, its pendency was known to them. That hearing, at which Roddy was the only witness, however, certainly disclosed that Roddy and his counsel[21] did not fully appreciate the meaning and consequences of a "night club permit." Had it been otherwise, Roddy would have had to give his certification. Thus, the commission was not in error, as the trial court found, in declining to apply General Statutes § 30-44 in this case. It was not mandated to do so under the circumstances. The trial court implied[22] in its decision that the com-

[20] The appeal of McGuire and Rocks, i.e., *Tavern on the Rocks, Inc.* v. *Town of Greenwich Board of Zoning Appeals* (Docket #CV 770019467 0) was dismissed by a judgment entered on April 23, 1979.

[21] For example, during the commission hearing counsel for Greenwich and Roddy, replying to argument by counsel for McGuire and Rocks, said: "That is our interpretation. Night club is night club. They [the legislature] defined it. Now, perhaps if what the legislature wanted to do was justify an extra hour of sale, they should have called it an extra hour permit. We wouldn't be here today. We are not concerned with that. They call it a night club. A night club permit. We have to go to Webster and to the State Building Codes. We have to go where they are defined. We don't have a choice." In addition to what we have already said of Roddy's position, we note that he also testified that he did not recall ever having had "any other application for a night club permit prior to this one."

[22] The trial court's memorandum of decision recites in part:

"After each refusal [of the zoning enforcement officer to certify that the subject premises were in accord with the zoning laws of the town] the defend-

mission also acted improperly in issuing the night club permit in 1977 because at that time the commission was aware of the pendency of the court appeal and the fact that that appeal had been dismissed. The court appeal was, of course, not dismissed until 1979, whereas the night club permit was issued in November, 1977, and its issuance reaffirmed in March, 1978.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal of the town of Greenwich and Maurice F. Roddy.

In this opinion the other judges concurred.

ants McGuire and Tavern on the Rocks appealed to the Zoning Board of Appeals which upheld the building official's decision.

"The defendants then appealed the Board's decision to the Court of Common Pleas and the appeal was dismissed.

"The Liquor Control Commission thereafter issued a night club permit to the defendants *in spite of the adverse decision,* and on a further hearing sustained its original action despite appearance and opposition of the Greenwich official." (Emphasis added.)