[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has taken this appeal from a decision of the defendant Zoning Board of Appeals (ZBA) upholding a cease land desist order issued by the Town's Building and Zoning Enforcement Officer (ZEO) and denying three of four requested variances.
The court finds the following facts:
The plaintiff owns property located on Route 1 in Groton which he had for some time operated as a Chinese Restaurant known as "Aloha Aloha". In 1990, prior to the issuance of the ZEO order, the plaintiff renamed his establishment "Spud's Cafe". Under the "Spud's Cafe" format, the plaintiff placed less emphasis on food service and more on the service of alcoholic beverages, introduced live four or five member blues bands up to four nights per week and set aside a cleared area on the floor of the establishment for dancing. Although there had been some dancing on the premises before the CT Page 8430 changeover, there was a substantial increase after the introduction of the bands.
The ZEO determined that the establishment's activities after these changes turned it into a "nightclub, cabaret or disco" and concluded that such usage violated Sections 7.1, 7.1-17 and 7.4-4 of the Town of Groton Zoning Regulations ("Regulations"), which require site plan approval prior to such a use. No such site plan for the property was ever submitted to or approved by the Town's Planning Commission. The ZBA, after a hearing, upheld the ZEO's determination and also denied three of four requested variances that would have, with Planning Commission approval, permitted the plaintiff to continue to operate Spud's Cafe as a "nightclub".
The court finds that the plaintiff is the owner of the property which was the subject of the proceedings before the ZBA, and that he is therefore aggrieved by the defendant ZBA's adverse decision. Bossert v. Norwalk, 157 Conn. 279, 285 (1968); Rogers v. Zoning Board of Appeals, 154 Conn. 484, 488
(1967).
The plaintiff correctly claims that the use of the property in question as a restaurant was pre-existing and nonconforming. It is therefore protected from subsequent regulations that might otherwise preclude such use. Melody v. Zoning Board of Appeals, 158 Conn. 516 (1969). The ZBA, however, claims that the use of the property as an alleged nightclub or cabaret or disco was not pre-existing, that this use differs substantially from its use as a restaurant, and that it is therefore subject to that portion of the Regulations that makes such a use conditional on the presentation of a site plan to the Planning Commission as well as additional requirements for which the plaintiff would need a variance.
Thus, the essence of the question for this court is whether the ZBA correctly upheld the ZEO's conclusion that the property in question was being operated not merely as a restaurant, but as a nightclub or cabaret or disco. In deciding appeals from decisions of a ZEO, a ZBA acts in a quasi-judicial capacity. It has authority to interpret its own Regulations and to decide whether those Regulations apply to a particular situation. Lawrence v. Zoning Board of Appeals, 158 Conn. 503,515 (1969). The test for judicial review of such a determination, like that of other quasi-judicial acts such as the denial of variances or special permits, is whether any of the reasons given by the ZBA are valid and supported by the record. Green v. Zoning Board of Appeals, 4 Conn. App. 500, 502
(1985). Where the Board fails to state its reasons, the court must search the record to attempt to find some basis for the CT Page 8431 action taken. Grillo v. Zoning Board of Appeals, 206 Conn. 362,369 (1988). In searching the records the trial court may rely on any reason culled from the record which demonstrates a real or reasonable relationship with the general welfare of the community, in which case, the Board's decision should be upheld. The court should not substitute its judgment for that of the Board as long as an honest judgment has reasonably and fairly been made after a full hearing. Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 732-733 (1988).
The function of this court is to decide whether the ZBA correctly interpreted the relevant regulations and applied them with reasonable discretion to the facts. Miniter v. Zoning Board of Appeals, 20 Conn. App. 302, 309 (1989). The court is not bound by the ZBA's legal interpretation of the regulations. Melody v. Zoning Board of Appeals, 158 Conn. 516, 518 (1969). The court may not substitute its discretion for that of the board, but it may overturn a board decision if it was unreasonable, arbitrary or illegal. Miniter, supra, 309.
The Regulations define "restaurant", the original use of the property, but they do not define "nightclub, cabaret or disco". The plaintiff argues that in the absence of a definition of these terms in the Regulations, the defendant Board is precluded from concluding that the plaintiff's establishment is being used in this fashion, and that its attempt to do so violates the plaintiff's rights to procedural due process. See Panell v. City of San Jose, 108, S.Ct. 849, 856 (1988).
But words and phrases are to be given their common and ordinary meanings. Lawrence v. Zoning Board of Appeals,158 Conn. 509, 514 (1969). Although many important terms, including "farm" and "cemetery", for example, are not defined in the defendant's Regulations, it can hardly be claimed that the ZBA is precluded from enforcing regulations relating to farms and cemeteries simply because those terms are not specifically defined. The meanings of these terms are well understood by the public without their being specifically defined in the Regulations. If "nightclub," "cabaret" and "disco" also have commonly understood meanings, a Board is entitled to give them such meanings in construing its own regulations.
The parties have offered slightly different dictionary definitions of the terms in question. The plaintiff cites Webster's Third New International Dictionary which defines "nightclub" as "a restaurant open at night usually serving liquor, having a floor show, and providing music and space for dancing". The defendant offers Webster's II New Riverside University Dictionary (Riverside Publishing Company, 1984), CT Page 8432 which defines "nightclub" as "(a) a commercial establishment that provides food, drink and entertainment and stays open late at night"; "cabaret" as "(a) restaurant or nightclub offering live entertainment, and; "disco" as "(a) nightclub with a showy decor and usually special lighting effects and featuring electronically amplified music for dancing."
The court consulted Webster's New 20th Century Dictionary, Unabridged, Second Edition (William Collins Publishers, Inc., 1979), which defines "nightclub" as "a place of entertainment open at night for eating, drinking, etc., often having a floor show"; "cabaret" as "a restaurant or bar room with dancing and singing as entertainment"; and "disco" or "discotheque" as "a cafe or other public place where dancing to recorded popular music takes place.
None of these definitions are particularly instructive, and, indeed, they frequently contradict each other. Connecticut case law sheds little additional light. In Greenwich v. Liquor Control Commission, 191 Conn. 528 (1983), a case which construed the now repealed "nightclub permit" portion of the liquor control statutes, Connecticut General Statutes Section 30-21a, our Supreme Court noted that the word "nightclub" was not defined in the statutes, nor had the term been defined by case law. In a footnote, the Supreme Court made mention of Meraux Nunez v. Houck, 202 La. 820, 839, 13 So.2d 233
(1942) in which a Louisiana court found that an airport restaurant, bar and lounge was not a "nightclub as that term is usually applied and understood. There were no floor shows, entertainers or orchestra." Greenwich, supra, at 539, n. 15.
It is worthy of note that the effect of the now repealed "nightclub permit", Connecticut General Statutes Section 30-21a, was simply to permit an establishment to continue to serve liquor for "one hour longer than the closing time established for the underlying permit in the absence of a local ordinance prohibiting it." Greenwich, supra, at 538. Thus, it is not unreasonable to assume that the definition of "nightclub" that was implicit in the state legislation was something along the lines of "an establishment serving liquor and staying open later than the closing time established for the underlying permit.". Since there was no change in operating hours following the transformation from "Aloha Aloha", Spud's Cafe would definitely not be a nightclub under such a definition.
At the hearing before the ZBA, the plaintiff argued that the only difference in the use of the premises after the change to "Spud's Cafe" was "the manner of the delivery of CT Page 8433 music". (Transcript of Zoning Board of Appeals Public Hearing, p. 4). Specifically, where the restaurant previously used juke boxes and loudspeakers, the establishment had begun to use live four or five member bands, three or four nights per week. There was somewhat less eating and more drinking than in the past, and substantially more dancing, but there was no change in the size of the establishment, its business hours or its basic function of being a restaurant with a liquor permit that provides music for its customers. Despite the name change, it is still advertised as a restaurant featuring Chinese food.
Zoning Enforcement Officer, Mark Tebbets, however, testified that the establishment "did change from a restaurant or primarily a restaurant to primarily a nightclub or disco or whatever you want to call it." (Emphasis added). He stated that "(t)he number of people in there has not changed that much. What they do when they get there has changed a great deal." However, although he claimed that the purpose of the Regulation was "so that the restaurant you had down the street doesn't turn into a noisy nightclub with a band until 1:00 in the morning", he acknowledged that "I have not gotten any complaints and I don't know of any. The police have not gotten any complaints about the noise or anybody in the residential area." (Transcript, p. 12.)
Although during the course of the hearing, the ZBA chairman at one point invited the plaintiff's attorney to try to define nightclub for him (Transcript, p. 4), the record of the hearing is in fact devoid of a definition of "nightclub, cabaret or disco" against which the alleged activities of Spud's Cafe could be reasonably measured. Indeed, the ZEO's own words, "or whatever you want to call it," illustrate the lack of a clearly shared understanding of what the nightclub concept implies. In the absence of any indication of the definition being used by the ZBA, it becomes quite difficult to discern the reasons which might form the basis of the ZBA's ultimate decision.
The plaintiff is inaccurate in claiming that in the absence of a definition within the Regulations, enforcement of the Regulations against a "nightclub, cabaret or disco" is impermissible. His implicit point, however, is that there needs to be a commonly understood definition in order for the Regulations to be enforceable, and the varying definitions that have been offered do not promote such a common understanding. Additionally, the lumping together of "nightclub, cabaret and disco" suggests the probability that the Regulations had in mind a concept substantially different from that of "Spud's Cafe". Although it is arguable that a four or five person band qualifies as "live entertainment", it is more probable that the definition of "nightclub" contemplates something more than the CT Page 8434 mere provision of music for dancing and passive listening. Based on the various dictionary definitions, the case law, and past state legislation concerning nightclubs, it is apparent that the entertainment associated with a nightclub is more in the nature of a "floor show" or an "act" of some sort, and that implicit in the concept is the notion of an establishment that stays open later at night, an issue not present in this case.
Thus, the problem in this case is not, as the plaintiff suggests, that the ZBA cannot enforce its Regulations regarding nightclubs because they lack a definition for that term. Rather, the problem is that the term lacks a commonly understood definition that is susceptible of meaningful enforcement, and that, in the absence of such a definition, both the ZEO and the ZBA are essentially left with nothing but their own highly subjective instincts to guide them. The town's population lacks reasonable notice of the sorts of activities that are contemplated by the Regulation. Moreover, the activities described by the ZEO at the hearing before the ZBA were quite ambiguous with regard to any of the definitions of "nightclub, cabaret or disco". It appears, in fact, from all the evidence and the various dictionary definitions, that the activities of "Aloha Aloha" before the changeover to "Spud's Cafe" were much more in keeping with the definition of a "disco" than those after the changeover were in keeping with that of a "nightclub".
In the utter absence of any real guiding principles and definitions, the Town of Groton Zoning Board of Appeals therefore acted unreasonably in determining that Spud's Cafe was being operated as a "nightclub, cabaret or disco". The record is devoid of any reasons that would have justified such a conclusion. In light of this determination, the court need not address the issue of the denial of the requested variances as they are no longer needed.
Appeal sustained.
SILBERT, J.