[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
Plaintiffs, Crest Pontiac Cadillac, Inc. (Crest) and Morande Bros., Inc., dba Morande Lincoln-Mercury-Mazda (Morande), appeal pursuant to General Statutes 4-183 the decision of the defendant, Louis Goldberg, Commissioner of the Connecticut Department of Motor Vehicles (Commissioner), to issue a dealer's license to defendant Gorin's Sports Car Center, Inc. (Gorin) without first holding a hearing which plaintiffs claim is required by General Statutes 42-133dd. Also named as defendants are the Department of Motor Vehicles (Department), Balch Pontiac-Buick, Incorporated (Balch), and Mazda Motor of America, Inc. (Mazda).
All defendants have moved to dismiss the appeal on grounds that there has been no "final decision" because there is no "contested case." Mazda has also moved to dismiss on grounds that plaintiffs failed to exhaust their administrative remedies and lack standing. All grounds raised in support of the defendants' motions to dismiss are addressed herein. The court rules in favor of the plaintiffs.
Certain preliminary facts are essentially undisputed. Prior to events giving rise to this dispute, Crest, Morande and CT Page 2271 Balch were authorized "Mazda" dealers pursuant to franchises with Mazda, a manufacturer and distributor of Mazda automobiles in the United States of America. Crest, Morande, Balch, and a fourth dealer not a party to this appeal were all operating in the trading area designated by Mazda as the "Hartford Metro Market."
In November, 1990, a review of the Hartford Metro Market led Mazda to recommend that Balch relocate from East Windsor to the Meadowlands near downtown Hartford. Crest's dealership is located in Newington, and Morande's dealership is located in Manchester.
In the summer of 1991, plaintiffs became aware of an arrangement between Mazda, Balch and Gorin whereby, according to the defendants, Gorin would purchase the assets of Balch's dealership and simultaneously move the dealership to 170 Weston Street, Hartford. By a "letter of protest" to the Commissioner dated August 6, 1991, plaintiffs claimed they were entitled to notice and a hearing pursuant to 42-133dd(a) before Mazda could take any action. The Department's response was noncommittal, simply stating that Mazda had indicated its intent to comply with its obligations under 42-133dd when a decision was reached concerning the Hartford location.
Subsequently, the Department received correspondence from Mazda in which Mazda indicated that it believed the proposed transaction involving Balch and Gorin was exempt from the requirements of 42-133dd. Further communications between plaintiffs and the Department also occurred.
In November, 1991 plaintiffs filed a "formal protest" against the proposed Balch-Gorin transaction and requested a hearing under 42-133dd. The Department responded by disclaiming jurisdiction to force Mazda to comply with42-133dd or to hold a hearing. The Department took the position that 42-133ee provides plaintiffs a remedy for non-compliance by Mazda.
In the meantime, Gorin applied for and received a new car dealer's license to sell Mazdas at its Hartford location. Plaintiffs received notice from Mazda dated November 27, 1991, announcing that Gorin would replace Balch and then be moved to Hartford.
Sections 42-133dd and 42-133ee provide, in part, as follows:
 42-133dd(a). In the event that a manufacturer or distributor seeks to enter into a franchise CT Page 2272 establishing a new dealer or relocating an existing dealer within or into a relevant market area where the same line make is then represented, the manufacturer or distributor shall in writing first notify the commissioner and each dealer in such line make in the relevant market area of its intention to establish a new dealer or to relocate an existing dealer within or into that market area. Within twenty days of receiving such notice or within twenty days after the end of any appeal procedure provided by the manufacturer or distributor, any such dealer may file with the commissioner a protest concerning the establishing or relocating of such new or existing dealer. When such a protest is filed, the commissioner shall inform the manufacturer or distributor that a timely protest has been filed, and that the manufacturer or distributor shall not establish or relocate the proposed dealer until the commissioner has held a hearing, nor thereafter, if the commissioner determines that there is good cause for denying the establishment or relocation of such dealer. This section shall not apply to the sale, lease or transfer of ownership of an active, existing dealer, nor shall any provision of this section prohibit a manufacturer from entering into a franchise arrangement with a successor dealer at the same location.
 (b) This section shall not apply to the relocation of an existing dealer within the dealer's area of responsibility under its franchise, provided that the relocation shall not be at a site within six miles of a licensed dealer for the same line make of motor vehicle.
. . . .
 (e) Any parties to a hearing by the commissioner concerning the establishing or relocating of a dealer may appeal any decision or order of the commissioner in accordance with section 4-183.
 42-133ee. Notwithstanding the terms, provisions or conditions of any agreement or franchise or the terms or provisions of any waiver, any consumer who is injured by a violation of sections 42-233r to 42-133ee, inclusive, or any party to a franchise who is so injured in his business or property by a violation of said sections relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of said sections, may bring a civil action in CT Page 2273 the superior court to enjoin further violations, and to recover the actual damages sustained by him together with the cost of the suit, including reasonable attorney's fees.
Final Decision/Contested Case
All of the defendants contend that this case is not a "contested case" within the meaning of General Statutes4-166 and 4-183 because, they argue, there is no statutory requirement that the Department hold a hearing on the plaintiffs' protest.
The Commissioner and the Department argue that the exceptions in subsection (b) of section 42-133dd apply in this case to exempt it from the hearing requirements of subsection (a). These defendants also argue that a hearing was not required under 42-133dd(a) because the requirements of that section, namely, that the manufacture give notice to the Commissioner and certain dealers and that the dealers receive such notice before filing a protest, were never satisfied. The Commissioner and the Department claim that the statute does not give the Commissioner the power to enforce the notice requirement, to determine whether the manufacturer has correctly decided not to give notice, or to apply retrospectively the provisions of 42-133dd(c) to invalidate a franchise agreement. The state defendants claim that42-133ee provides the proper remedy for plaintiffs.
Similarly, defendant Gorin argues that there was no "contested case" because no hearing was held. Gorin also asserts that plaintiffs are not entitled to a hearing under42-133dd because the exception in subsection (b) applies. Additionally, Gorin argues that the manufacturer, not the Commissioner, initiates the hearing process because the manufacturer is responsible for issuing the notice.
Mazda argues that both 42-133dd(e) and 4-166(2) of the Uniform Administrative Procedure Act require that a hearing have been conducted before one can appeal. It argues that4-183 assumes throughout each of its subsections that a hearing was held prior to judicial review. Mazda also claims that plaintiffs do not have a right to a hearing under42-133dd because its plans concerning Balch and Gorin fall within the exceptions set forth in 42-133dd(a) and (b).
The claim which is common to all of the defendants is that no hearing is required by the statute unless and until the manufacturer, Mazda in this case, sends notices of its intentions to the Commissioner and the dealers. The defendants CT Page 2274 fundamentally misread the statute in that regard, however, Section 42-133dd(a) states that "[i]n the event that a manufacturer . . . seeks to enter into a franchise establishing a new dealer or relocating an existing dealer within or into a relevant market area where the same line make is then represented, the manufacturer . . . shall in writing first notify the commissioner and each dealer . . . ." (Emphasis added.) The statute is mandatory. It cannot, therefore, be interpreted as leaving to the manufacturer the discretion to send a notice or not, or the power to determine whether or not the exceptions apply. If this were so, the manufacturer alone could determine who was entitled to a hearing and, indeed, could preclude dealers in every case from filing a protest and obtaining a hearing simply by refusing to send notice. Such a result would essentially nullify the protection which the statute affords dealers who wish to take advantage of its provisions.
Courts must reject an interpretation that would have the statute operate in a way that is difficult and bizarre. Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583, 593522 A.2d 771 (1987). They "`must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the object which the legislature sought to obtain.'" Builders Service Corporation v. Planning Zoning Commission, 208 Conn. 267, 276, 545 A.2d 530 (1988) (citation omitted).
This court concludes that the written notice referred to in 42-133dd(a) was intended to be just that — notice of the manufacturer's intent — not a condition precedent to the hearing provision of the statute. In the instant case, as indicated by plaintiff Morande's November 22, 1991 letter of protest, plaintiffs had notice of Mazda's plans prior to the protest. Under the unusual circumstances of this case, where a dealer and the Department have actual knowledge of a manufacturer's plans to establish a new dealership or relocate an existing dealership, regardless of how the manufacturer chooses to characterize them, and the dealer files a protest, a hearing is required before the manufacturer can act. As part of that hearing, the Commissioner must first determine, based on evidence, whether or not the manufacturer's plans constitute the establishment of a new dealer or the relocation of an existing dealer within the meaning of 42-133dd(a) and, if so, whether or not the exceptions in 42-133dd(a) and (b) apply. If the Commissioner concludes that the manufacturer is not seeking to establish or relocate a dealer or that the exceptions do apply, the Commissioner does not entertain the merits of the protest, i.e., whether good cause has been established for not entering into the franchise in accordance CT Page 2275 with 42-133dd(c).
This court holds that 42-133dd requires the Commissioner to determine the right of plaintiffs to have their protest heard on the merits after an opportunity for a hearing, and therefore, that the agency proceeding at issue in this case constituted a "contested case." Accordingly, this court finds that plaintiffs' appeal is from a "final decision" as defined in 4-166 and that the defendants' motions to dismiss cannot be granted on this ground.
Exhaustion
In addition to the claim that the plaintiffs have not appealed from a final decision, Mazda argues that they have not exhausted their administrative remedies. Specifically, Mazda asserts that the plaintiffs could have requested a declaratory ruling of the applicability of 42-133dd to the circumstances of the Balch-Gorin transaction pursuant to 4-176 of the UAPA. Even though Gorin did not move to dismiss on the ground that plaintiffs failed to exhaust their administrative remedies, in a reply to plaintiffs' brief, it argues that plaintiffs could have filed a petition for a declaratory ruling from the agency within the meaning of 4-176, prior to the issuance of Gorin's license.
If an adequate administrative remedy exists, it must be exhausted before the superior court will obtain jurisdiction to act in the matter. Pet v. Department of Health Services,207 Conn. 346, 350-51, 542 A.2d 672 (1988).
Having held that the plaintiffs have a right to a determination from the Commissioner, after opportunity for a hearing, as to whether their protest must be heard on its merits pursuant to 42-133dd, this court concludes that42-133dd(e) provides plaintiffs a right of appeal directly to the superior court.
Section 42-133dd(e) provides: "Any parties to a hearing by the commissioner concerning the establishing or relocating of a dealer may appeal may decision or order of the commissioner in accordance within section 4-183." The court recognizes that plaintiffs were not "parties to a hearing." However, as already stated, under the circumstances of this case, the Commissioner is required to hold a hearing to determine first whether the manufacturer intends to establish or relocate a dealer within the meaning of 42-133dd(a) and, if so, whether the statutory exceptions apply. Only if the Commissioner concludes that the manufacturer intends to establish or relocate a dealer and that the exceptions do not CT Page 2276 apply, is the Commissioner required to go on to determine whether good cause is established for not entering into a franchise. A hearing is required, however, whether or not the Commissioner is eventually required to address the good cause issue.
Therefore, the plaintiffs were entitled to "parties to a hearing" within the meaning of 42-133dd(e). Section 42-133dd(e) cannot be read to exclude one who was entitled to a hearing and include another in the same position simply because the Commissioner recognized only the latter's entitlement to a hearing. Otherwise, the Commissioner could determine who has a right of appeal under the statute by simply refusing to hold a hearing, even where one is required by law. As 42-133dd(e) provides plaintiffs with a right to "appeal" without requiring that any other, additional measures be taken, this court concludes that plaintiffs have not failed to exhaust their administrative remedies.
Furthermore, the defendants' position that plaintiffs should have sought a declaratory judgment is inconsistent with their claims that only the manufacturer can trigger the hearing process by sending notice and that the Commissioner cannot force the manufacturer to comply with the notice requirements. Even if the plaintiffs had sought a declaratory judgment, the Department's decision would have had no binding effect, according to the defendant's theory, because the Commissioner would have had no authority to force the manufacturer to send notice and the manufacturer would have been left free to act on its own belief that no notice was required under the facts of the case. Thus, the defendants' interpretation of the statute renders a request for a declaratory judgment a futile act.
"Among the exceptions [to the exhaustion doctrine] is where recourse to the administrative remedy would be futile or inadequate; . . . ." Pet, supra, 353 (citations omitted). "`The law does not require the doing of a useless thing.'" Greenwich v. Liquor Control Commission, 191 Conn. 528, 542,469 A.2d 382 (1983) (citations omitted); Corsino v. Grover,148 Conn. 299, 308, 170 A.2d 267 (1961).
In addition, a request for a declaratory judgment would also have been futile because the correspondence to plaintiffs from the Department, by officials responding at the direction of the Commissioner, indicated the Department's position concerning the applicability of 42-133dd to the circumstances of this case. The Department made clear that it did not interpret the statute so as to give it the power to determine whether the establishment or relocation of a dealer was planned and whether the exceptions applied. Rather, CT Page 2277 the Department disclaimed jurisdiction on those issues and stated that only the manufacturer had the power to make those determinations. The Department stated that it had no authority to force compliance by the manufacturer and did not intend to take a position as to whether the manufacturer had correctly interpreted its statutory obligations. In a sense, plaintiffs had already received a declaratory judgment as to the applicability of 42-133dd in the instant case at the time they brought this appeal. This court concludes that any further attempt to obtain a ruling from the Department on this issue would have been futile.
Standing
Mazda argues that plaintiffs lack standing to challenge the licensing of Gorin on grounds that 42-133dd shows that no notice or hearing is required for the replacement of one dealer by another or the relocation of a dealer within that dealer's area of responsibility and not within six miles of any other dealer for the same line make. Mazda argues that Gorin is a successor or replacement dealer, which relocated within its area of responsibility and not within six miles of the plaintiffs. Therefore, Mazda contends plaintiffs lack standing. Additionally, Mazda argues that 42-133cc(1) through (15), which plaintiffs allege the Department violated when it licensed Gorin without a hearing, are irrelevant to the appointment of a new or replacement dealer and do not provide plaintiff a cause of action.
In its reply brief, Gorin states that it does not "concede" that plaintiffs are aggrieved and reserves its right to challenge plaintiffs' aggrievement should further proceedings be necessary.
Section 42-133dd(e) and 4-183(a) require plaintiffs to be aggrieved before they may appeal. In order to have standing to bring an administrative appeal, a person must be aggrieved. Light Rigging Co. v. DPUC, 219 Conn. 168, 172, 592 A.2d 386
(1991).
 "`"[T]he fundamental test for determining aggrievement encompasses a well-settled two-fold determination: first, `the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement CT Page 2278 must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision.' . . ."' (Citations omitted)."
Id., 173.
It has already been held that the plaintiffs have a legal right to a hearing in which the Commissioner is required, first, to determine whether their protest must be heard on its merits, i.e., whether the manufacturer intends to establish, or relocate a dealer and, if so, whether the statutory exceptions apply. Since the plaintiffs were denied such a hearing, their legal right was specially and injuriously affected by the decision. Therefore, this court finds plaintiffs aggrieved and have standing for purposes of this appeal.
Based on the foregoing, this court denies defendants' motions to dismiss on all grounds.
MALONEY, JUDGE