[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 8, 1997
The principal issue in this appeal is whether the defendant Department of Liquor Control (department)[1] acted legally in granting a package store permit to one applicant when it simultaneously granted another applicant permission to remove a package store permit to premises within 1,500 feet of the other permittee. Based on this record, the court holds that the department acted legally.
The plaintiffs are Frederick and Margaret Loulis, Mary Corrine and Robert Riga, and Seraphina Cascella (the plaintiffs). They appeal from a decision of the department granting the defendant Dean B. Parrott (Parrott) a liquor permit for the premises at 600 Main Street, Monroe, Connecticut (600 Main Street). Also named as a defendant is the Town of Monroe (Monroe), which certified Parrott's application for a liquor permit CT Page 12456 for 600 Main Street. The owner of 600 Main Street, Bart Center, Inc. (Bart Center) was granted leave by the court to intervene and has filed a brief.
For purposes of these proceedings, the following are the material facts.[2] The plaintiff Frederick Loulis was holder of, and Margaret Loulis the backer for, a package store liquor permit for 600 Main Street. Frederick and Margaret Loulis (Loulis) leased these premises from Bart Center. They were evicted from 600 Main Street in May 1994 as a result of a judgment of possession obtained by Bart Center against them in a summary process action. Loulis' package store permit was placed in voluntary suspension with the department in July 1994. The permit was subsequently renewed[3] and again voluntarily and timely suspended. Loulis then obtained a lease for 630 Main Street, Monroe, Connecticut ("630 Main Street"). Both 600 Main Street and 630 Main Street are situated in a Design Business (DB-1) zoning district. Loulis filed an application for removal of the permit from 600 Main Street to 630 Main Street on or about July 14, 1994, pursuant to General Statutes § 30-52.[4] The application for removal was opposed by the zoning enforcement authority of the town of Monroe on the ground that 630 Main Street was in a zoning district in which a package store was not a permitted use and because 630 Main Street was within 1,500 feet of the preexisting package store at 600 Main Street.[5]
Subsequent to Loulis' eviction, Parrott leased the premises at 600 Main Street from Bart Center and applied for a package store liquor permit with the approval of the Monroe zoning official. The plaintiffs filed a remonstrance in opposition to Parrott's application, arguing that only one party in the area of 600-630 Main Street could be granted a package store permit. The hearing on Loulis' removal application and the hearing on Loulis' remonstrance to Parrott's application were held on the same day. The department also decided both matters on the same day. The department issued two decisions, one granting Loulis' removal application and one granting Parrott's application for permit. The department granted Loulis' application for removal despite the opposition of Monroe, CT Page 12457 on the ground that General Statutes § 30-52 preempted the town's zoning regulations as to location. The propriety of that decision is not now before this court. The department granted Parrott's permit despite Loulis' objections, stating that there was no inconsistency with the simultaneous granting of both permits. Loulis filed a petition to reopen and/or reconsider which the department denied. The plaintiffs have appealed the granting of Parrott's petition to this court.[6]
"Before addressing the merits of the present appeal, we must determine whether we have jurisdiction."Pollio v. Conservation Commission,32 Conn. App. 109, 113, 628 A.2d 20 (1993). Parrott and Bart Center claim that the plaintiffs lack standing to maintain this appeal. "The issue of standing invokes the trial court's subject matter jurisdiction. D.S. Associatesv. Planning Zoning Commission,27 Conn. App. 508, 511, 607 A.2d 455 (1992)." R R Pool Home,Inc. v. Zoning Board of Appeals, 43 Conn. App. 563,568, 684 A.2d 1207 (1996).
"The right to appeal a decision of an administrative agency exists only under statutory authority." Cannatav. Department of Environmental Protection,215 Conn. 616, 622, 577 A.2d 1017 (1990). Under General Statutes § 30-60, "any ten residents who have filed a remonstrance . . . and who are aggrieved by the granting of a permit by the department may appeal therefrom in accordance with section 4-183."[7] As the defendants correctly argue, and as the plaintiffs concede, only six of the persons who signed the remonstrance submitted to the department have filed this appeal. General Statutes § 30-60, therefore, is inapplicable. The defendants maintain that this is dispositive.
The plaintiffs contend that they may nonetheless maintain this appeal as aggrieved persons pursuant to General Statutes § 4-183 of Connecticut's Uniform Administrative Procedure Act (UAPA). They also argue that they may maintain this appeal as resident taxpayers of the town of Monroe.
General Statutes § 4-183(a) provides in relevant CT Page 12458 part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal." Even though General Statutes § 30-60
specifically governs review of decisions of the department,[8]
the plaintiffs may still avail themselves of the appellate rights conferred by General Statutes § 4-183 if they are aggrieved. This is so because, by statutory fiat, "[t]he UAPA `applies to all agencies and agency proceedings not expressly exempted.' General Statutes § 4-185." Herman v. Division of Special Revenue,193 Conn. 379, 381, 477 A.2d 119 (1984).[9] "The exemptions are set forth in §§ 4-186[,] 4-188a. Since the defendant [department] is not listed as exempt in any of these sections, it is therefore nonexempt and is subject to the provisions of the UAPA." Hartford v.Powers, 183 Conn. 76, 81, 438 A.2d 824 (1981); seeAll Brand Importers v. Department of Liquor Control,213 Conn. 184, 211, 211 n. 15, 567 A.2d 1156 (1989) ("The provisions of the UAPA apply to the department of liquor control . . ."); Crescimanni v. Liquor ControlCommission, Superior Court, Judicial District of Hartford-New Britain, No. CV 94 536961 (Oct. 6, 1994), affirmed, 41 Conn. App. 83, 674 A.2d 851 (1996) ("The plaintiffs appeal is authorized by [General Statutes] §§ 30-60 and 4-183"); cf. Bendell v. Johnson,153 Conn. 48, 50-51, 212 A.2d 199 (1965); Kiska v.Skrensky, 145 Conn. 28, 34, 138 A.2d 523 (1958);Newington v. Mazzoccoli, 133 Conn. 146, 156,48 A.2d 729 (1946).
The plaintiffs predicate their claim of aggrievement, inter alia, on the rule that a resident taxpayer of a town is aggrieved by a decision granting a license to sell liquor.
"Our discussion of this issue must begin with the case of [Beard's Appeal, 64 Conn. 526, 30 A. 775
(1894)], which, despite its venerable age, is the controlling precedent." American Trading Real EstateProperties, Inc. v. Trumbull, 215 Conn. 68, 72,574 A.2d 796 (1990). Over one hundred years ago, in Beard's Appeal, the Supreme Court held that any CT Page 12459 resident taxpayer was aggrieved and had the right to appeal a decision of the county commissioners granting a license to sell liquor. Said the court: "[E]very owner of property, assessed in the grand list of the town in which he resides, has a substantial interest in the prosperity and good order of that town. The expense of the local police of any town, as well as of criminal proceedings before its local tribunals, is largely dependent on the number of liquor saloons and bar rooms within its limits, and the character of those who keep them. If licenses are granted with too free a hand, or without proper discrimination, the burdens of taxation are likely to be increased. Every taxpayer therefore has a certain, though it may be a small, pecuniary interest in having the license law well administered; and if he is also a resident in the town where he pays taxes, he has an additional interest, common to every citizen, in promoting the general welfare of the community.
"In view of these considerations, we think that any resident taxpayer of a town who feels aggrieved at the granting of a license for the sale of liquors therein, has the right of appeal . . . and that he is not bound to show any grievance or interest in the matter peculiar to himself . . ." Beard's Appeal, supra, 64 Conn. 534.
This holding, however, was grounded in the text of the statute then under consideration, Public Acts, 1893, chapter 175, which explicitly granted such a right of appeal to taxpayers who were aggrieved.[10]
This public act was codified as § 2660 of the 1902 Revision of the General Statutes and later as § 2755 of the 1918 Revision of the General Statutes. In 1919, however, the right of taxpayers to appeal the granting of a liquor license was repealed, contemporaneously with the passage of the Eighteenth Amendment to the Constitution of the United States.[11] When the Liquor Control Act was enacted following the repeal of Prohibition by the Twenty-First Amendment, the Act provided for an appeal by an applicant or permittee only. General Statutes (1933) § 1055c.
In 1930, the General Assembly enacted the Standard Zoning Enabling Act of 1925, drafted by the CT Page 12460 United States Department of Commerce. Miles v. ZoningBoard of Appeals, Superior Court, Judicial District of Fairfield, No. 292009 (April 12, 1993). That legislation provided for appeals from zoning boards to the court of common pleas by persons "aggrieved." Since the repeal of Prohibition in 1932, the Connecticut Supreme Court, invoking the holding in Beard's Appeal, has repeatedly held, notwithstanding the absence of any statutory basis, that where the sale of liquor is implicated in a zoning decision "the status of . . . plaintiffs as taxpayers in the community entitles them to prosecute [a zoning] appeal." Dolan v. ZoningBoard of Appeals, 156 Conn. 426, 428, 242 A.2d 713
(1968); see Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 193-95, 676 A.2d 831 (1996); Macaluso v.Zoning Board of Appeals, 167 Conn. 596, 600, 601,356 A.2d 885 (1975); MR. Enterprises, Inc. v. ZoningBoard of Appeals, 155 Conn. 280, 281, 231 A.2d 272
(1967); Cowles v. Zoning Board of Appeals,153 Conn. 116, 117, 214 A.2d 361 (1965); Tyler v. Zoning Boardof Appeals, 145 Conn. 655, 660, 145 A.2d 832 (1958);Zuckerman v. Zoning Board of Appeals, 144 Conn. 160,164, 128 A.2d 325 (1956); O'Connor v. Zoning Boardof Appeals, 140 Conn. 65, 72, 98 A.2d 515 (1953);Kamerman v. LeRoy, 133 Conn. 232, 237, 50 A.2d 175
(1946); see also Farr v. Zoning Board of Appeals,139 Conn. 577, 583, 95 A.2d 792 (1953); Edelson v. ZoningCommission, 2 Conn. App. 595, 597, 481 A.2d 421
(1984); Jackson's, Inc. v. Zoning Board of Appeals,21 Conn. Sup. 102, 106-107, 145 A.2d 241 (1958).
In Tyler v. Board of Zoning Appeals, 145 Conn. 655,661, 145 A.2d 832 (1958), the Supreme Court rationalized this rule, stating that "[t]he essence of the holdings in Beard's Appeal, supra, and the cases which have followed it, is that to be an aggrieved person within the meaning of the statute one must show a pecuniary interest injuriously affected by the action of the zoning board . . . and that such a showing may be sufficiently made, in a case where liquor traffic is involved, by proof that one is a taxpayer in the town, in view of the pecuniary effect upon every taxpayer resulting from the incidents of such traffic. Such a distinction recognizes, again, that in liquor traffic there is a possible source of danger to the public which CT Page 12461 is not inherent in other businesses and that therefore such traffic warrants distinctive and particular treatment."
The Supreme Court has never held that the "resident taxpayer" rule for cases involving the sale of liquor applies to appeals taken pursuant to General Statutes § 4-183 of the UAPA. However, the court did state, in Hartford Distributors, Inc. v. Liquor ControlCommission, 177 Conn. 616, 621 n. 3, 419 A.2d 346
(1979), albeit in dicta, that the rule was a "limited exception" to the three categories of parties entitled to appeal from the action of the department.
As stated supra, this court finds that Beard'sAppeal, supra, 64 Conn. 534, is controlling precedent. "It is axiomatic that a trial court is bound by Supreme Court precedent . . . This principle is inherent in a hierarchical judicial system." (Citations omitted.) Jolly, Inc. v. Zoning Board of Appeals,supra, 237 Conn. 195. Even if the pronouncements in Beard's Appeal were considered dicta, they still would control here. First, even if considered dicta, such a characterization would "not diminish the persuasiveness of the legal proposition stated. There is weak dictum and strong dictum. Our Supreme Court has acknowledged that dictum is not binding because it is made `with no intent to lay down in positive form a rule of law.' Sharkiewicz v. Smith,142 Conn. 410, 412, 114 A.2d 691 (1955). We construe the Supreme Court's language in [Beard'sAppeal], however, as clearly having an `intent to lay down in positive form a rule of law.'" Sleavin v.Greenwich Gynecology Obstetrics, P.C.,6 Conn. App. 340, 345-46, 505 A.2d 436, cert. denied,199 Conn. 807, 508 A.2d 769 (1986). Second, the holding in Beard's Appeal has been repeatedly followed, albeit in the context of zoning. Third, whileBeard's Appeal long predated the enactment of the statutory predecessors to General Statutes § 30-60, the reasoning and sociological observations in that case concerning the ills wrought by intoxicating liquor remain valid, even though the damages which intoxicating liquor wreaks may have been surpassed by illegal narcotics. And, intoxicating liquors are sold from establishments to which a liquor permit CT Page 12462 has issued, as in Beard's Appeal.
This court is aware that a contrary conclusion was reached by the court in Seaquist v. Liquor ControlCommission, Superior Court, Judicial District of Hartford-New Britain, No. 566661 (April 11, 1997). In that case, the court held that (1) Beard's Appeal and Jolly,Inc. v. Zoning Board of Appeals, supra, 237 Conn. 184, applied to the decision of a local zoning board allowing the sale of alcoholic beverages within the municipality, (2) the primary objective of zoning is to promote the health, safety, welfare and prosperity of the community, in which every taxpayer in the community has a strong interest, (3) "By contrast, the decision of the state liquor control agency does not protect the same interests to the same degree as the zoning ordinances do. General Statutes § 30-44 provides, `The Department of Consumer Protection shall refuse permits for the sale of alcoholic liquor . . . where prohibited by the zoning ordinance of any city or town.' Thus, the department grants a permit only after taxpayers and residents have already had the opportunity to assert their opposition; that is, by opposing the zoning ordinances which allow the disputed activity." Seaquist v.Liquor Control Commission, supra.
First, Beard's Appeal, supra, 64 Conn. 526, was clearly not a zoning appeal but an appeal from the granting of a license to sell intoxicating liquors from the authority then charged with issuing such licenses.
Second, it is true that the Supreme Court has stated that "[t]he primary object of zoning is to promote the health, safety, welfare and prosperity of the community.Devaney v. Board of Zoning Appeals,132 Conn. 537, 539, 45 A.2d 828. Its ultimate purpose is to confine certain classes of buildings and uses to certain localities." Langbein v. Board of Zoning Appeals,135 Conn. 575, 580, 67 A.2d 5 (1949).
Third, however, it is not accurate to state that a decision of the state liquor control authority does not protect similar interests to the same degree as the zoning ordinances do. Zoning is concerned with the use of property generally. Del Buono v. Board of ZoningCT Page 12463Appeals, 143 Conn. 673, 679, 124 A.2d 915 (1956). The department and the statutes governing the issuance of liquor permits are concerned with the suitability of the location at which liquor will be sold, as well as the suitability of the permittee.[12] Downer v. LiquorControl Commission, 134 Conn. 555, 556-57,59 A.2d 290 (1948). In addition to General Statutes §§ 30-22(e),30-22a(b), 30-23(a), which require that various permits be granted only where they will be used in a suitable building, General Statutes § 30-46, entitled "Discretionary refusal of permit; location or character of premises; other grounds," provided in subsection "a" at the time the plaintiffs brought this appeal: "The department of liquor control may, except as to a store engaged chiefly in the sale of groceries refuse to grant permits for the sale of alcoholic liquor if it has reasonable cause to believe: (1) That the proximity of the permit premises will have a detrimental effect upon any church, public or parochial school, convent, charitable institution, whether supported by private or public funds, hospital or veterans' home or any camp, barracks or flying field of the armed forces; (2) that such location is in such proximity to a no-permit town that it is apparent that the applicant is seeking to obtain the patronage of such town; (3) that the number of permit premises in the locality is such that the granting of a permit is detrimental to public interest, and, in reaching a conclusion in this respect, the department may consider the character of, the population of, the number of like permits and number of all permits existent in, the particular town and the immediate neighborhood concerned, the effect which a new permit may have on such town or neighborhood or on like permits existent in such town or neighborhood; (4) that the place has been conducted as a lewd or disorderly establishment; or (5) that there is any other reason as provided by state or federal law or regulation which warrants such refusal."
"The General Assembly, by this statute, has vested a liberal discretion in the commission in determining the suitability of the location of proposed liquor-permit premises. Gulia v. Liquor Control Commission,164 Conn. 537, 538, 325 A.2d 455." Campisi v. LiquorControl Commission, 175 Conn. 295, 297, CT Page 12464397 A.2d 1365 (1978). "Moreover, because of the danger to public health and welfare inherent in liquor traffic, the police power to regulate the liquor trade runs broad and deep, more so than comparable regulatory powers over other activities. Viola v. Liquor Control Commission,158 Conn. 359, 362, 260 A.2d 585." Williams v.Liquor Control Commission, 175 Conn. 409, 412,399 A.2d 834 (1978). While a zoning commission is concerned with all uses, the concern of the Liquor Control Commission (now the Department of Consumer Protection) is concentrated on "the danger to public health and welfare inherent in liquor traffic . . ." Id. In any event, whatever nice distinction may be drawn between the interests protected by local zoning authorities and the interests protected by the Department of Consumer Protection in acting on applications for liquor permits, there is no rational relationship between that fine distinction and limiting the holdingBeard's Appeal to appeals from local zoning decision. The argument advanced by the Seaquist court that a resident taxpayer should be denied the opportunity to contest the granting of a liquor permit because "the department [of consumer protection] grants a permit only after taxpayers and residents have already had the opportunity to assert their opposition; that is, by opposing the zoning ordinances which allow the disputed activity" (emphasis added) is not a cogent reason. No authority has been cited denying a person the right to appeal the granting of a permit of any kind because he did not challenge the enactment of a statute or regulation implicated in the decision. Such an argument is especially wanting here where the plaintiffs claim that in fact there is a zoning ordinance prohibiting the disputed activity.
Fourth, although General Statutes § 30-44 requires that a permit to sell liquor be denied when it conflicts with a local zoning ordinance, this is merely a starting point for the department. As demonstrated by the foregoing statutory authorities, the department may deny a permit notwithstanding the applicant's compliance with local zoning regulations. Moreover, there are circumstances where the commission has the authority to determine that the issuance of a permit would not violate zoning regulations notwithstanding the CT Page 12465 determination of a local zoning enforcement officer that it would. See Greenwich v. Liquor Control Commission,191 Conn. 528, 539, 469 A.2d 382 (1983).
This is not to say that the rule that any resident taxpayer of a town has standing to appeal a permit to sell intoxicating liquor ought not be abrogated. As the court in Seaquist v. Liquor Control Commission, supra, aptly observed, the right to appeal from the action of an administrative agency is a creature of, and is limited by, statute. "In the field of legislation, the legislature is supreme. Courts must apply legislative enactments according to their plain terms." State v.Malm, 143 Conn. 462, 467, 123 A.2d 276 (1956). In the generations which have passed since the repeal of Prohibition, the legislature has failed to engraft a provision for the appeal by resident taxpayers from decisions involving the trafficking of intoxicating liquors onto either the zoning statutes or the liquor control statutes. Ordinarily, courts cannot engraft amendments into the statutory language. Red HillCoalition v. Town Plan Zoning Commission,212 Conn. 727, 736, 563 A.2d 1347 (1989); see State exrel. Heimov v. Thomson, 131 Conn. 8, 12, 37 A.2d 689
(1944).
It is to say that I can divine no principled distinction that would support a holding that Beard's Appeal,supra, 64 Conn. 534, which today unquestionably applies to zoning decisions, does not also apply to liquor permit decisions. "The opinions of the Supreme Court of Connecticut are binding upon the Superior Court, and the rule of [Beard's Appeal] is clear and explicit. Until it is reversed, changed or modified by the Supreme Court, this court must follow it." Montesv. Hartford Hospital, 26 Conn. Sup. 441, 442-43,226 A.2d 798 (1966); see Jolly v. Zoning Board of Appeals,supra, 227 Conn. 184; see also American TruckingAssn. v. Smith, 496 U.S. 167, 180, 110 S.Ct. 2323,110 L.Ed.2d 148 (1990); Rodriguez De Quijas v.Shearson/American Express, 490 U.S. 477, 484,109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
Because under Beard's Appeal, supra,64 Conn. 533, and its progeny, a resident taxpayer of a town is CT Page 12466 deemed to be aggrieved by a decision granting a liquor license, the plaintiffs are aggrieved by the action of the department. A person aggrieved by a final decision of a state agency may appeal to the Superior Court pursuant to General Statutes § 4-183(a). A "final decision" is defined by statute to include an agency determination in a contested case. General Statutes § 4-166(3). "`Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 or hearings referred to in section 4-168." General Statutes § 4-166(2). The "supplement to record" filed in this case by the commission reflects that a remonstrance was filed containing over 100 signatures of persons who identified themselves as residents of the town of Monroe.[13] General Statutes § 30-39(c) provides that when a remonstrance is filed by any ten residents of the state, the commission is required to hold a hearing on the permit application.[14]
Since a hearing was required, and in fact was held, the Commission's ruling was a "final decision" on a contested case which was appealable under General Statutes § 4-183(a) by anyone aggrieved by that decision. Since, as discussed supra, the plaintiffs are aggrieved, their appeal is properly before the court.
 II
The plaintiffs claim that the department granted Parrott a package store permit in violation of local zoning regulations. The department argues that the plaintiffs may not maintain this appeal because they failed to exhaust their administrative remedies.
In Astarita v. Liquor Control Commission,165 Conn. 185, 332 A.2d 106 (1973), the plaintiff who sought a grocery store beer permit requested that the local zoning enforcement officer certify that the zoning laws did not prohibit the sale of alcoholic liquor under such a permit at the subject location. The zoning enforcement officer advised the plaintiff that the Meriden CT Page 12467 zoning laws prohibited the use requested and refused to sign the application certifying compliance with the zoning ordinance. The plaintiff, instead of appealing his decision to the zoning board of appeals, as provided in the zoning ordinance and in § 8-6 of the General Statutes, filed his application for a permit with the liquor control commission. The commission denied the plaintiffs application, stating as its reason the unsuitability of the proposed location because the issuance of a permit at that location would be in violation of zoning regulations. The plaintiff appealed this ruling to the Court of Common Pleas. The trial court held that the zoning regulations did not prohibit the issuance of a liquor permit for the subject premises and sustained the appeal. The Supreme Court reversed. On appeal the Supreme Court held that since under General Statutes § 8-6 zoning boards of appeals have the power and duty to hear and decide appeals from alleged errors of zoning enforcement officials, the trial court should have dismissed the plaintiff's appeal because, in bypassing the local zoning board of appeals, he had failed to exhaust his administrative remedies. Said the court: "`We have frequently held that when a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. McNish v. American Brass Co.,139 Conn. 44, 53, 89 A.2d 566: State Water Commission v.Norwich, 141 Conn. 442, 447, 107 A.2d 270 . . . The power of the board to review, on appeal, under § 8-6(1) of the General Statutes, any decision of the zoning enforcement officer and, under § 8-7, to reverse, affirm or modify that decision . . . supplies some measure of elasticity. Pascale v. Board of Zoning Appeals,150 Conn. 113, 116, 186 A.2d 377. This power is vested in a zoning board of appeals, both to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment. Carrick v. Langtry, 99 N.H. 251,254, 108 A.2d 546; see 2 Rathkopf, Zoning and Planning (3d Ed.) p. 37-6, § 1.' Country Lands, Inc. v.Swinnerton, [151 Conn. 27, 33, 193 A.2d 483]." Id., 189. CT Page 12468
Subsequent to the filing of briefs and the hearing in this appeal, the Supreme Court released its opinion inLoulis v. Parrott, 241 Conn. 180 (1997), an appeal from a declaratory judgment action involving this very controversy. In that opinion, the court distinguished Astarita
on the basis that the plaintiff in Astarita, unlike the plaintiffs here, "had full notice of the denial of his application by the zoning enforcement officer and, therefore, of the availability of a timely appeal to the zoning board of appeals." Id., 192-93. "The legislature could not possibly have intended that the plaintiffs be required to exhaust an administrative process of which they neither had notice nor even had any right to notice." Id., 192. "Indeed, it is only proper to allow such an aggrieved party to challenge the permit's validity in an appropriate judicial forum, given the lack of notice and consequent lack of meaningful opportunity to pursue an administrative appeal." (Emphasis added.) Id., 194. The issue left undecided by the Supreme Court; id., 198 n. 12; and which this court has raised suo motu,[15] is what is the appropriate judicial vehicle by which an aggrieved party may challenge the issuance of a liquor permit on the grounds that the permit was granted in violation of one or more zoning regulations.
Persons aggrieved by the decision of a zoning authority granting permission to an applicant to operate a store where liquor is sold clearly may appeal to the Superior Court. Kamerman v. LeRoy, 133 Conn. 232,237, 50 A.2d 175 (1946). However, as discussed supra, the Supreme Court, in its recent decision involving the named parties to this appeal, has held that such a zoning appeal is not required. In the absence of such a zoning appeal, "[i]f it should be found that such sales [of liquor] by the defendant were in violation of the zoning ordinance of the . . . town, any party whose justiciable interests were injured thereby would in a proper case, be entitled to seek redress in an action for injunction." Newington v. Mazzoccoli, supra,133 Conn. 156, on remand, 14 Conn. Sup. 459 (1946). InMazzoccoli, which was an action for a declaratory judgment and an injunction; id., 133 Conn. 148; the court went on to state: "The rights of the parties could apparently be fully determined in an action seeking CT Page 12469 affirmative relief, and there appears no reason for asking for a declaratory judgment . . . but if such a reason should appear an action for such a judgment would lie." (Citations omitted.) Id., 157.
Mazzoccoli however, does not mandate that where the granting of a liquor permit is challenged for noncompliance with zoning regulations that the challenge must be by way of an independent action for an injunction and may not be raised in a direct appeal from the granting of the liquor permit. While such challenges appeared to have been precluded in the last 25 years by Astarita v. Liquor Control Commission,supra, 165 Conn. 185, prior to that case, the Supreme Court had entertained direct appeals from the denial of liquor permits on the ground that the issuance of the permit would conflict with local zoning regulations. See Dubitzky v. Liquor Control Commission,160 Conn. 120, 273 A.2d 876 (1970); Barnini v. LiquorControl Commission, 146 Conn. 416, 151 A.2d 697
(1959); cf. Greenwich v. Liquor Control Commission,191 Conn. 528, 469 A.2d 382 (1983). Under the language of Newington v. Mazzoccoli, supra,133 Conn. 156-57, a challenge to the granting of liquor permit by an original action for an injunction, or a declaratory judgment and injunction, is permissive; there is no authority grounded in statute or case law for relegating the plaintiffs to a different species of proceeding and delaying a decision on the merits of this appeal. The department necessarily must, "in acting upon applications referred to it, determine in each case whether the sale of alcoholic liquor is permissible under the zoning regulations of the particular town involved." Ginsberg v. Post, 177 Conn. 610, 614,418 A.2d 941 (1979). An appeal from the department's decision may challenge the propriety of such a determination. The court therefore holds that the plaintiffs may challenge in this administrative appeal the granting of a liquor permit to Parrott on the grounds that the department's action violates local zoning regulations.
 III
"Having determined that this court has jurisdiction over this case, we proceed to address the merits of this CT Page 12470 appeal." Housing Authority v. Lamothe, 225 Conn. 757,766, 627 A.2d 367 (1993).
"Because of the nature of the liquor business, the police power to regulate and control it runs broad and deep, much more so than the power to curb and direct ordinary business activity. Ruppert v. Liquor ControlCommission, 138 Conn. 669, 674, 88 A.2d 388 [1952], and cases cited. The statute vests the commission with a liberal discretion. Cusano v. Dunn, 137 Conn. 20. 25, 74 A.2d 477 [1950], and cases cited [which should not lightly be disregarded. Sumara v. Liquor ControlCommission, 165 Conn. 26, 30, 327 A.2d 549 (1973)]. It does not, however, authorize the commission to act capriciously, unreasonably or arbitrarily. Kantrowitzv. Patterson, 132 Conn. 426, 428, 44 A.2d 916 [1945].Aminti v. Liquor Control Commission, 144 Conn. 550,552, 135 A.2d 595 (1957): see Pierce v. Albanese,144 Conn. 241, 248, 129 A.2d 606 [, appeal dismissed,355 U.S. 15, 78 S.Ct. 36, 2 L.Ed.2d 21] (1957). The function of the [trial court] on an appeal from the commission is to determine whether the commission acted so arbitrarily and unreasonably as to abuse its discretion. The court can do no more than decide whether upon the facts before it the commission has mistaken the law, or whether it has reached a conclusion untenable in the light of logic and reason. Aminti v. LiquorControl Commission, 144 Conn. 550, 553,135 A.2d 595 [1957]; DeMond v. Liquor Control Commission,129 Conn. 642, 646, 30 A.2d 547 [1943]. The issue is whether the commission has followed the mandate of the law and whether its decision could be reached by an impartial appraisal of the facts and is the result of reason and logic. Aminti v. Liquor Control Commission,supra, 553. Williams v. Liquor Control Commission,175 Conn. 409, 413-14, 399 A.2d 834 (1978). In this context, a crucial consideration is General Statutes § 30-44, which provides that the commission `shall refuse permits for the sale of alcoholic liquor . . . (2) where prohibited by the zoning ordinance of any city or town.' We have said, and we reaffirm, that § 30-44
is a statutory mandate that the zoning ordinances of any city or town must be complied with before any permit for the sale of alcoholic liquor can be granted by the liquor control commission. Karp v. ZoningCT Page 12471Board, 156 Conn. 287, 298, 240 A.2d 845 (1968); seeP.X. Restaurant v. Windsor, 189 Conn. 153, 160,454 A.2d 1258 (1983); Kamerman v. LeRoy, [supra,133 Conn. 236]." (Internal quotation marks omitted in part.) Greenwich v. Liquor Control Commission, supra,191 Conn. 533-34.
As to the merits, "[t]he only . . . issue in this case is the effect of the 1,500 foot separation distance provision in the Monroe Zoning regulations which the plaintiffs contend was violated by the defendant Commission when it issued a liquor permit to Parrott after granting the removal permit to Loulis under § 30-52 of the General Statutes." Plaintiffs' Reply Brief, p. 4.[16]
That is, the plaintiffs argue that since the department properly granted Loulis' removal permit, which determination is now final, Parrott's permit could not be granted subsequently without violating the 1,500 foot zoning rule. This court disagrees with the plaintiffs' analysis.
 A.
Preliminarily, it is necessary to determine whether there is a requirement in the zoning regulations that a package store not be within 1,500 feet of another package store. At oral argument, the department denied that there is any such requirement and that, in fact, both 600 Main Street and 630 Main Street are in a DB-1 zone in which package stores are not permitted at all. There is no question but that the department is correct insofar as it asserts that both premises are in a zoning district in which a package store is not a permitted use. Since there is no regulation providing for a package store in a DB-1 zone, there is no regulation providing that a package store may not be within a distance of 1,500 feet of another package store in a DB-1 zone. It would be a simple matter, as well as simplistic, to conclude the analysis at this point since it is an elementary rule that "[c]ourts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." State ex rel.Kennedy v. Frauwirth, 167 Conn. 165, 168,355 A.2d 39 (1974). However, because of the extraordinary authority CT Page 12472 conferred on the department to allow the transfer or removal of a liquor permit to a location where such a use violates the zoning regulations and because package stores are permitted in a DB-2 zone subject to a 1,500 distance rule, further examination of the legislative intent behind the Monroe zoning regulations is appropriate.
First, some historical perspective on the Monroe zoning regulations is necessary for the proper disposition of this issue. See Perry v. Perry,222 Conn. 799, 806, 611 A.2d 400 (1992); State v. Nardini,187 Conn. 109, 118, 445 A.2d 304 (1982); Going v.Cromwell Fire District, 159 Conn. 53, 60,267 A.2d 428 (1970). Prior to 1977, § 117-1101 of the Monroe zoning regulations provided that in a Design Business (DB-1) District permitted uses included, inter alia, the sale of beer under a grocery store beer permit, the sale of alcoholic beverages for consumption on the premises under a restaurant permit, the sale of alcoholic beverages for consumption on the premises in a bona fide club under a club permit, and "[t]he sale of alcoholic beverages under a package store or drugstore permit, provided a package store permit is located not less than one thousand five hundred (1,500) feet along a public street from any other package store permit, and a drugstore permit is located not less than one thousand five hundred (1,500) feet along a public street from any other drugstore permit." The regulations for a DB-2 District generally permitted, inter alia: "Any uses in a DB-1 District, as provided in § 117-1101." In 1977 those regulations were amended. Section 117-1101 still provided for the sale of beer and alcoholic beverages under various permits in connection with various uses in a DB-1-district, as before. However, the provision dealing with the sale of alcoholic beverages under a drugstore or package store permit subject to a 1,500 foot rule was bifurcated. Subsection 12 of § 117-1101 still provided for the sale of alcoholic beverages under a drugstore permit, subject to the 1,500 foot rule, but a package store was not provided as a permitted use in a DB-1 district. The regulations for a DB-2 district again provided that "[a]ny uses permitted in a DB-1 District" were CT Page 12473 permitted in a DB-2 district. However, the regulations for the DB-2 district further permitted: "The sale of alcoholic beverages under a package store permit provided a package store permit is located not less than one thousand five hundred (1,500) feet along a public street from any other package store permit." Zoning regulations of the Town of Monroe, § 117-1102.A(10). Thus, the regulation providing and regulating the sale of alcoholic beverages under a package store permit was transferred from the section of the regulations governing the DB-1 zone to the regulations governing the DB-2 zone.
Secondly, it is significant that the requirement in the regulation that a package store permit not be within 1,500 feet of another package store permit is in the same sentence of the regulation that permits such a use in a DB-2 zone. That is, both the allowance for such a use and the requirement that a package store permit not be within 1,500 feet of another package store permit are interrelated. Cf. Stern v. MedicalExamining Board, 208 Conn. 492, 498-501,545 A.2d 1080 (1988); Sofas v. McKee, 100 Conn. 541, 544-45,124 A. 380 (1924); Visco v. Cody, 16 Conn. App. 444,451-52, 547 A.2d 935 (1988). Notably, the 1,500 foot distance rule is not applicable to all other uses involving the sale of alcoholic beverages. This suggests that the zoning commission intended that under no circumstances could a package store use be permitted if it violated the 1,500 foot distance rule. "The regulations must be construed as a whole and in such a way as to reconcile all their provisions as far as possible."Kleinsmith v. Planning Zoning Commission,157 Conn. 303, 313, 254 A.2d 486 (1968); see Karp v.Zoning Board, 156 Conn. 287, 293, 240 A.2d 845
(1968); cf. Bradley v. Zoning Board of Appeals,165 Conn. 389, 334 A.2d 914 (1973) (use not permitted anywhere in the regulations may not be allowed by variance).
Concededly, "we are not obligated to read statutes so as to be consistent with local regulations." FyberProperties Killingworth Ltd. Partnership v. Shanoff,228 Conn. 476, 486, 636 A.2d 834 (1994). Indeed, it is asking too much of a local land use authority to expect CT Page 12474 that it will expressly specify the conditions under which a use which it has excluded from particular zone may be permitted when the use is imposed on it by another agency. It is fatuous to contend that the 1,500 foot distance rule applies in a zone in which a package store is a permitted use but not in a zone in which such a use is not permitted at all. For these reasons, this court concludes that the zoning regulations contemplate that wherever a package store permit is allowed the requirement that it not be within 1,500 feet of another package store permit applies.
 B.
Even though the 1,500 foot distance rule applied to the granting of Loulis' and Parrott's permits, the plaintiffs cannot prevail because a necessary if implied linchpin of their claim is that Loulis' permit was granted before Parrott's. That claim is borne out neither by the record nor the law.
Preliminarily, it is necessary to observe that once Loulis was evicted from 600 Main Street, that location did not retain its character as a permit place; Penyakv. Liquor Control Commission, 16 Conn. Sup. 353, 355
(1949); and that Loulis' application for a removal permit "is to be treated as a new license at the place to which the business is to be removed." Marenna'sAppeal, 87 Conn. 350. 351, 87 A. 745 (1913); accordSayers' Appeal, 89 Conn. 315. 321, 94 A. 358 (1915).
In order for the plaintiffs to prevail, Parrott's package store permit must have been granted for premises within 1,500 feet of another package store permit. The record and the supplement to the record reflect that Parrott's petition for a liquor permit was received by the department on May 18, 1994 and was "approved for processing" on June 16, 1994. The record does not reflect the date when Loulis application for removal was received by the department, but the record does reflect that this date was not prior to July 14, 1994 when the town clerk of the town of Monroe signed the application. The hearing on Parrott's application was scheduled for October 4, 1994 and was continued to December 15, 1994. On December 15, 1994 "[t]he CT Page 12475 commission held a consolidated hearing on both the Loulis and Parrott permit applications." Plaintiffs' brief, p. 2.[17] The department's memorandum of decision granting Loulis application refers to the pendency of Parrott's application at the time of the hearing. The memorandum of decision granting Parrott's application refers to the granting of Loulis' application but explicitly states that both decisions had been simultaneously handed down." At the time of the decisions, Loulis' permit for 600 Main Street was under involuntary suspension.
Had the department filed its decision granting Parrott's application a moment before it issued its decision granting Loulis' application there could be no issue that the granting of the former would have violated the 1,500 foot distance rule. Although it couched its rationale in terms of "the equities," "[i]t must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Couch v. Zoning Commission,141 Conn. 349, 358, 106 A.2d 173 (1954); seeState v. Smith, 197 Or. 96, 252 P.2d 550, 554 (1953); Martin v. Board of Supervisors, 181 Miss. 363,178 So. 315, 320 (1938). Courts "are not disposed too rigorously to apply technical rules to the actions of administrative boards and commissions . . ." Strain v. Mims,123 Conn. 275, 283, 193 A. 754 (1937).
In light of the record and absent any showing of an abuse of discretion, the department was entitled, as a matter of administrative discretion, to dispose of each application as if Parrott's had been decided first. To hold that the department did otherwise would elevate form over substance. Connecticut courts "have often stated that we will not exalt form over substance. Statev. Rosedom, 34 Conn. App. 141, 143, 640 A.2d 634
(1994); Wilton v. McGovern, 33 Conn. App. 517, 521,636 A.2d 870, cert. denied, 228 Conn. 928,640 A.2d 116 (1994); Connecticut National Bank v. Browder,30 Conn. App. 776, 779, 622 A.2d 588 (1993); TollandCT Page12476 Bank v. Larson, 28 Conn. App. 332, 337, 610, A.2d 720 (1992)." Brown v. Rosen, 36 Conn. App. 206,210-11, 650 A.2d 568 (1994). "In general, the same rules applicable to the construction of statutes apply to the construction of an order of an administrative agency. Thus, the aim and object of construction is to ascertain the intent of the administrative body. In so doing, the order or determination of an administrative body must be viewed in its entirety; and the whole proceedings must be considered in order to determine what the order was intended to accomplish. Administrative orders are not to be read and interpreted in a vacuum but rather must be read and interpreted in the entire context in which they arise, and must be construed in conformity with the authority under which they are issued." 73A C.J.S., Public Administrative Law and Procedure, § 149. Since this court construes the department's decisions as having effectively decided and granted Parrott's petition first, there was no other liquor permit within 1,500 feet of Parrott's permit and the zoning regulations were not violated.
The plaintiffs heavily rely on a trial court opinion of the former court of Common Pleas, Penyak v. LiquorControl Commission, 16 Conn. Sup. 353 (1949). InPenyak, the lease of the plaintiff permittee was not renewed by the landlord who, with his wife, then sought a liquor permit for the premises. The plaintiff applied for a removal permit for premises 200 feet away. The commission heard both permits simultaneously, but did not act on the landlord's application. It denied the plaintiff's application claiming that to grant it would violate a distance rule in the zoning regulations because, it reasoned, "though the permittee was evicted the place retained its character as a permit place for thirty days, during which period no removal permit could issue . . ." Id., 355. The court held this was error. More, the court stated: "It is of course true that the commission could not grant both applications without violating the statute and the [zoning] ordinance. When there are two pending applications, both by `suitable persons' for `suitable premises,' and only one can be granted, the commission may properly consider the relative equities as between CT Page 12477 the several applicants and in the exercise of sound discretion approve the application of that one found to have the more equitable claim." Id., 356.
This court is not persuaded by this last quoted sentence of Penyak. First, "[t]rial court cases do not establish binding precedent. J.M. Lynne Co. v. Geraghty,204 Conn. 361, 369, 528 A.2d 786 (1987)." McDonaldv. Rowe, 43 Conn. App. 39, 43, 682 A.2d 542
(1996). Second, the language in Penyak on which the plaintiffs rely was "at best, dicta and not binding precedent on this court." Lerman v. Levine,14 Conn. App. 402, 410, 541 A.2d 523 (1988).
Most importantly, Penyak has been legislatively overruled. Unlike the statute before the court in Penyak,[18]
General Statutes § 30-52(a) now provides, as it has since 1955,[19] that a removal permit may be granted to a permittee who has been the subject of an eviction proceeding "[n]otwithstanding the existence of any local zoning ordinance . . . prohibiting or affecting the establishment or removal to a new location of an alcoholic liquor use within certain specified distances of other alcoholic liquor uses of the same or different kinds . . ."[20] Thus here, unlike in Penyak, the department could issue both a new original permit (to Parrott) as well as a removal permit (to Loulis) within the 1,500 foot distance proscribed by the zoning regulations.
The appeal is dismissed.
LEVIN, J.